Roderick S. LUECK, Plaintiff-Appellant-Petitioner,

v.

AETNA LIFE INSURANCE COMPANY† and Allis-Chalmers
Corporation, Defendants-Respondents.

Supreme Court

*No. 82–1041. Argued January 5, 1984.—Decided January 31, 1984.*

(Also reported in 342 N.W.2d 699.)

† Caption changed from Aetna Life & Casualty Company to reflect corporate name change.

For the plaintiff-appellant-petitioner there were briefs by *Gerald S. Boisits* and *Frank & Kenny,* Milwaukee, and oral argument by *Mr. Boisits.*

For the defendants-respondents there were briefs by *Robert C. Burrell* and *Borgelt, Powell, Peterson & Frauen, S.C.* for Aetna Life & Casualty Company, and *Stanley S. Jaspan, Renee L. Johnson* and *Foley & Lardner* for Allis-Chalmers Corporation, and oral argument by *Mr. Burrell* and *Maurice McSweeney,* all of Milwaukee.

WILLIAM G. CALLOW, J.  This is a review of an unpublished decision of the court of appeals affirming a judgment of the circuit court for Milwaukee County, Judge Leah M. Lampone, granting summary judgment to the defendants and dismissing the plaintiff's complaint seeking damages in a bad faith tort action. We reverse the court of appeals and remand the matter for further proceedings consistent with this opinion.

The issues presented on appeal are as follows: (1) Does a union employee's cause of action for bad faith against his employer arise under section 301 of the Labor Management Relations Act, 29 U.S.C. sec. 185 (1976), thus requiring him to exhaust labor agreement remedies prior to instituting suit? (2) If an employee's bad faith claim arises under state law rather than the Labor Management Relations Act (LMRA), is the action nevertheless preempted by federal labor law? (3) Can the employee bring a bad faith claim against the administrator of a disability insurance plan based on a labor agreement negotiated between his employer and his union?

The plaintiff, Roderick S. Lueck, was an employee of the Allis-Chalmers Corporation (A-C) and a member of the International Union, United Automobile Aerospace and Agricultural Implement Workers of America

(UAW), which was the exclusive collective bargaining agent for Lueck and other A-C employees. Under the terms of the labor agreement between A-C and the UAW, A-C provided its employees with a group health and disability insurance plan. The union agreement also provided a grievance procedure to deal with disputes about insurance claims. Although A-C acted as a self-insurer for the insurance plan, it entered into a contract with the Aetna Life and Casualty Company to administer the plan. While Aetna was responsible for actually disbursing insurance payments, A-C provided the fund to pay benefits under the insurance plan, and A-C retained authority to approve all payments on individual claims.

On July 20, 1981, Lueck notified A-C that he had suffered a nonwork-related injury, and he requested disability benefits for the period he was unable to return to work. A-C began paying Lueck the disability benefits on July 20, 1981. The payments, for unexplained reasons, were repeatedly stopped and then reinstated during the period Lueck was absent from work. Ultimately, however, Lueck received all payments due him for his disability period.

On January 18, 1982, Lueck filed a complaint against A-C and Aetna. Lueck alleged that the defendants "intentionally, contemptuously, and repeatedly" failed to pay disability benefits which they had no reasonable basis for denying. Lueck further alleged that, as a result of the defendants' bad faith in dealing with his insurance claims, he incurred debts, great emotional distress, physical impairment, pain and suffering. Lueck sought $10,000 in compensatory damages and $300,000 in punitive damages. Lueck at no time filed a grievance under the grievance procedures provided by the union agreement to deal with insurance claim disputes.

On February 23, 1982, and February 26, 1982, A-C and Aetna, respectively, moved for summary judgment on

the grounds that Lueck's claim was governed under or preempted by federal labor law. As a separate ground, Aetna also asserted that, as the administrator of A-C's insurance plan, it had no fiduciary duty to Lueck to deal in good faith on his disability claim and, therefore, could not be sued for bad faith. In response to Aetna's separate ground for its motion, Lueck's attorney filed an affidavit pursuant to sec. 802.08(4), Stats., stating that further discovery was needed to oppose Aetna's factual claim that it acted only as the administrator of the insurance plan.

After a hearing held on March 29, 1982, the circuit court granted the defendants' summary judgment motions. The court concluded that Lueck's action arose under section 301 of the LMRA, and therefore Lueck's remedy must be pursued under the labor agreement grievance procedure. The court also ruled that, even if Lueck's claim was not governed by section 301, a separate state tort claim was preempted by federal labor law. In reaching its decision, the trial court did not address Aetna's argument that no bad faith claim could be brought against it because it had no fiduciary duty to deal in good faith with Lueck's claim. The court on May 26, 1982, entered judgment dismissing Lueck's complaint on the merits and with prejudice.

Lueck appealed the judgment to the court of appeals. The court affirmed the judgment on two grounds. First, the court held that, because Aetna was merely the administrator of A-C's insurance plan, there existed between Lueck and Aetna no fiduciary relationship upon which to base a claim of bad faith against Aetna. Second, the court held that a state law claim for bad faith against A-C was preempted by federal labor law. Lueck petitioned this court for review of the court of appeals' decision. We granted the petition for review on May 24, 1983.

The first issue we must decide is whether Lueck's bad faith claim is governed by section 301, 29 U.S.C. sec. 185 (1976),[1] of the LMRA. Section 301 provides a jurisdictional basis for any claim arising out of a violation of a contract between an employer and a labor organization. Federal labor law governs such claims, whether they are brought in state or federal court. *See Vaca v. Sipes,* 386 U.S. 171 (1967) ; *Smith v. Evening News Assn.,* 371 U.S. 195 (1962). However, before a section 301 action may be brought, the injured party must exhaust all available contractual remedies, in this case the grievance procedure established to handle insurance claim disputes. *See Vaca,* 386 U.S. at 184; *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53 (1965).

The defendants argue that Lueck's claim, even though denominated as a state tort claim, is grounded in and inseparable from a breach of the labor contract. They argue that to find bad faith there must first be a determination that Lueck had certain rights under the contract and that those contractual rights were breached when the defendants disputed his disability claim. The defendants assert that such breaches of contract are precisely the type of claim section 301 covers. Consequently, they argue, Lueck's claim must be dismissed because it was conceded that Lueck did not exhaust his contractual remedies prior to instituting suit.

We do not agree with the defendants' analysis of the nature of Lueck's claim. In *Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978), we

[1] 29 U.S.C. sec. 185(a) (1976) reads, in relevant part:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

recognized that a bad faith claim may arise from an insurer's handling of an insured's claim under an insurance contract. We held that an insurance contract establishes a relationship between the insured and the insurer which places upon the insurer a good faith obligation to pay the reasonably undisputable claims of its insured. In establishing the precise nature of the bad faith claim, we emphasized that "the tort of bad faith is not a tortious breach of contract. It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* at 687. We also noted that separate damages are recoverable for the tort of bad faith and for breach of the insurance contract.[2] *Id.* at 686.

Lueck's claim is not for a breach of contract; rather, it is a separate and independent claim arising out of the manner in which his disability claim was handled. For purposes of pursuing this claim, Lueck need only first establish that the defendants owed him a duty by virtue of the insurance contract. Even though that duty arose initially because of the insurance provided through the labor agreement, that fact alone does not persuade us that Lueck's claim is in essence a contractual claim.[3]

---

[2] In *Anderson* we established that plaintiffs may recover for emotional distress only when there are other substantial damages aside from the emotional distress and the loss of the contract benefits and the emotional distress is severe. *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 695–96, 271 N.W.2d 368 (1978). We also noted that punitive damages were appropriate only where there was "showing of an evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct." *Id.* at 697.

[3] We rejected a similar argument in *Coleman v. American Universal Insurance Co.*, 86 Wis. 2d 615, 273 N.W.2d 220 (1979). In *Coleman* an injured employee brought a bad faith claim against a worker's compensation insurer and its agent. The

We disagree with the defendants' assertion that the bad faith claim is "inextricably intertwined" with the labor agreement. The specific violation of the labor contract, if there was one, is irrelevant to the issue of whether the defendants exercised bad faith in the manner in which they handled Lueck's claim. We note in this regard that, under the rule of *Anderson,* Lueck would have to pursue a separate claim and remedy for any breach of contract. Lueck concedes that, if he were bringing only a breach of contract claim, it would be governed by section 301. We conclude, however, that Lueck's bad faith claim is not a labor contract dispute and, therefore, is not governed by section 301.[4]

The next issue is whether Lueck's state law claim is nevertheless preempted by federal labor law. The general rule concerning federal labor law preemption of state law claims was stated by the United States Supreme Court in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 244–45 (1959) :

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by section 7 of the National Labor Relations Act, or constitute a unfair labor practice under section 8, due

---

defendants argued that because the initial relationship between the insured and insurer arose under the worker's compensation statute, proceedings under that statute constituted his only remedy. We rejected this argument, holding that the bad faith claim was not based on the original work-related injury but, rather, was a separate claim resulting from the intentional acts of the insurer and its agent while investigating and paying the claim. Similarly, in this case, Lueck's claim is not based on a breach of the labor contract; rather, it is a separate claim based on the defendants' handling of his disability insurance.

[4] This finding is in accord with our decision in *Coleman, supra,* where we held that worker's compensation statute remedies did not govern a bad faith claim even though the claim was related to an injury falling under worker's compensation insurance coverage.

regard for the federal enactment requires that state jurisdiction must yield.
". . . .

". . . When an activity is arguably subject to section 7 or section 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

However, the Supreme Court has recognized that a rigid application of the *Garmon* preemption doctrine might adversely impact on legitimate state regulation of certain activities. The Court in *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 188 (1978), stated:

"While the *Garmon* formulation accurately reflects the basic federal concern with potential state interference with national labor policy, the history of the labor preemption doctrine in this Court does not support an approach which sweeps away state-court jurisdiction over conduct traditionally subject to state regulation without careful consideration of the relative impact of such a jurisdictional bar on the various interests affected. As the Court noted last Term:

" 'Our cases indicate . . . that inflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme.' *Farmer v. Carpenters,* 430 U.S. 290, 302.

"Thus the Court has refused to apply the *Garmon* guidelines in a literal, mechanical fashion." (Footnotes omitted.) [5]

Recognizing this concern, the Supreme Court developed exceptions to the *Garmon* preemption test:

". . . We have refused to apply the pre-emption doctrine to activity that otherwise would fall within the

[5] *See also Motor Coach Employees v. Lockridge,* 403 U.S. 274, 289 (1971) ; *Vaca v. Sipes,* 386 U.S. 171, 179 (1967).

scope of *Garmon* if that activity 'was a merely peripheral concern of the Labor Management Relations Act . . . [or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' . . . We also have refused to apply the pre-emption doctrine 'where the particular rule of law sought to be invoked before another tribunal is so structured and administered that, in virtually all instances, it is safe to presume that judicial supervision will not disserve the interests promoted by the federal labor statutes.' " *Farmer v. Carpenters,* 430 U.S. 290, 296–97 (1977). (Citations omitted.)

Applying the first part of the *Farmer* test, we conclude that the activity regulated by permitting bad faith suits would be "a merely peripheral concern of the Labor Management Relations Act." The defendants argue that the tortious conduct alleged by Lueck falls within the ambit of activity regulated under section 8(a)(5) and (d) of the National Labor Relations Act (NLRA), 29 U.S.C. sec. 158(a)(5) and (d) (1976).[6] The defendants

[6] 29 U.S.C. secs. 158(a)(5) and (d) (1976) provide:

"(a) . . .

"It shall be unfair labor practice for an employer—

". . . .

"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

". . . .

"(d) . . .

"For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession."

assert that these provisions of the NLRA impose upon the employer the duty to carry out in good faith the term of a labor agreement. The failure of the employer to live up to its contract obligations is an unfair labor practice, which is actionable by an injured party under section 301. The defendants contend that Lueck's bad faith claim is in essence a claim that A-C failed to act in good faith in carrying out the terms of the labor agreement and, more specifically, the insurance contract provisions of that agreement. Thus, the defendants argue, Lueck's claim involves a central concern of the NLRA, namely, the duty of parties to a collective bargaining agreement to abide in good faith by the terms of the agreement.

We believe that the defendants have mischaracterized the nature of Lueck's claim. As we noted earlier, Lueck's claim is not for breach of the labor contract; his is a separate and independent claim arising from the manner in which his disability claim was handled. The latter type of activity is not, we conclude, specifically prohibited by the NLRA. The NLRA imposes a good faith obligation in following the terms of the labor contract and addresses only breaches of the labor contract itself; it does not prohibit the specific type of tortious conduct alleged by Lueck. Simply because the words "good faith" appear in the NLRA does not mean that the same conduct is regulated. Good faith in the labor agreement context means that parties must abide by the specific terms of the labor agreement; good faith in the insurance contract context means that the insurer has a separate duty to deal reasonably with its insured, as well as the duty to abide by the specific terms of the insurance contract.

We also note in regard to prohibited conduct that "[t]he critical inquiry . . . is . . . whether the controversy presented to the state court is identical to (as

in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. at 197. (Footnote omitted.) Because the state bad faith claim in this case is not identical to a breach of contract claim, which would have to be brought pursuant to federal labor law, there is little risk of interference with the type of conduct arguably prohibited by section 8 of the NLRA.

We recognize that a bad faith claim could stem from a breach of contract. Although a breach of contract is not directly relevant to the determination of whether there was bad faith on the part of the insurer, there may be a breach underlying the tortious activities alleged by the plaintiff. In that situation conduct arguably covered by section 8(a) (5) and (d) would be at issue. However, we conclude that this would constitute only a minor aspect of the controversy because the breach itself is not dispositive of the central issue of bad faith. As the Supreme Court has recognized,

". . . Where only a minor aspect of the controversy presented to the state court is arguably within the regulatory jurisdiction of the Labor Board, the Court has indicated that the *Garmon* rule should not be read to require pre-emption of state jurisdiction. *Hanna Mining Co. v. Marine Engineers,* 382 U.S. 181."

*Sears, Roebuck & Co. v. Carpenters,* 436 U.S. at 189 n. 13. We conclude, therefore, that there is little risk that permitting the state cause of action to proceed will result in state regulation of conduct which Congress intended to prohibit through application of the NLRA.

Finally, the type of activity in question here, namely, the payment of disability claims under an insurance contract, is not a central aspect of labor relations. While we recognize that Leuck's claim may touch upon the terms of the labor agreement, it certainly will not implicate any activity, such as picketing, organizing, striking, and bargaining, which is at the heart of the NLRA. We note that in several cases the Supreme Court recognized exceptions to the *Garmon* doctrine even where the state tort claim arose out of an important labor activity. *See, e.g., Linn v. Plant Guard Workers,* 383 U.S. 53 (1966) (defamatory statements circulated in connection with a campaign to organize workers) ; *United Construction Workers v. Laburnum Corp.,* 347 U.S. 656 (1954) (threats and intimidation used during union organizing drive) ; *Automobile Workers v. Russell,* 356 U.S. 634 (1958) (mass picketing and threats of violence during a strike) ; *Sears, Roebuck & Co. v. Carpenters, supra* (trespass by union pickets). We conclude that the regulation of the payment of disability claims under a labor agreement insurance plan is "a merely peripheral concern" of the LMRA.

The next part of the *Farmer* test involves inquiry into whether the complained of activity "touch[es] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we [can]not infer that Congress had deprived the States of the power to act." *Garmon,* 359 U.S. at 244. In *Anderson* we noted that the duty of an insurer to act as a fiduciary in adequately protecting the interests of its insureds had its origins in our opinion in *Hilker v. Western Automobile Insurance Co.,* 204 Wis. 1, 231 N.W. 257, 235 N.W. 413 (1930, 1931). *Anderson,* 85 Wis. 2d at 687. Al-

though *Anderson* was a fairly recent recognition[7] of the fiduciary duty to settle insureds' claims against their own insurance companies, the holding was consistent with this state's well-established tradition of regulating insurers' conduct toward their insureds. Implicit in our adoption of the tort of bad faith is the recognition that insureds must have a remedy for particularly oppressive treatment by their insurers; by giving insureds this remedy, we ensure that insurers will act reasonably toward their insureds or be answerable for any injuries they may cause. We believe that this state has a substantial interest in protecting its citizens from the kind of treatment which Lueck has alleged.[8] We conclude, therefore, that the regulation of relations between insurers and insureds is an interest deeply rooted in local feeling and responsibility. We also note that there is no compelling congressional direction that Congress has deprived this state of the power to regulate such activity. Although Congress through the NLRA has preempted state regulation of labor activities, we do not believe that Congress would, without comment, remove a means of judicial recourse for those injured by such tortious conduct, even if a limited remedy were provided under the Act. *See United Construction Workers v. Laburnum*

[7] We note, however, that the Supreme Court's decisions permitting the exercise of state jurisdiction "have not rested on the history of the tort at issue, but rather on the nature of the State's interest in protecting the health and well-being of its citizens." *Farmer v. Carpenters*, 430 U.S. 290, 303 (1977).

[8] The tort of bad faith falls within the general type of intentional conduct which the Supreme Court has recognized as implicating compelling state interests. *See, e.g., Automobile Workers v. Russell*, 356 U.S. 634 (1958) and *United Construction Workers v. Laburnum Corp.*, 347 U.S. 656 (1954) (protection against violence); *Linn v. Plant Guard Workers*, 383 U.S. 53 (1966) (protection of reputation); *Farmer v. Carpenters, supra* (freedom from mental distress); *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180 (1978) (possession of real property).

*Corp.*, 347 U.S. at 663–64. Accordingly, we find that the second part of the *Farmer* test is satisfied.

The third, and final, part of the *Farmer* test is the requirement that permitting the state action to proceed will not adversely impact on the effective administration of national labor policy. As we noted earlier, the proof necessary to establish the fiduciary relationship support-ing a bad faith claim need only show the existence of an insurance contract, not any breach of that contract. We do not agree with the defendants' contention that inquiry into the existence of or terms of the insurance contract involves "interpretation" of the labor agreement, which is a function reserved to the National Labor Relations Board. Merely looking at the face of the insurance con-tract to establish its terms does not conflict with the board's labor enforcement powers. Had Lueck brought a section 8 unfair labor practice claim, the board's pro-ceeding would focus on whether A-C lived up to the letter of the insurance contract, i.e., did A-C pay Lueck the money due him for his disability? Whether the way in which A-C carried out its actions constituted an in-tentional breach of a fiduciary duty would be of no relevance to the Board's performance of its contract en-forcement functions. Moreover, the board would have authority only to remedy the breach of contract by ordering A-C to pay Lueck his disability benefits, plus, perhaps, interest. The board would lack the authority to compensate Lueck for physical injury, emotional distress, or other injuries,[9] or to award punitive damages where the insurer's conduct was particularly outrageous.

[9] *See, e.g., Linn v. Plant Guard Workers, supra* at 64, where the Supreme Court held that a state law claim for malicious libel was not preempted by federal labor law and noted: "The Board's lack of concern with the 'personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption."

Conversely, the state bad faith action would be unconcerned with whether A-C violated its labor agreement by breaching the insurance contract. We note in this regard that a bad faith action could be maintained even if no breach of insurance contract occurred. For example, an insurer could ultimately pay a claim, and thereby meet the terms of the insurance contract, but still have caused injury to its insured by unreasonably delaying payment of a legitimate and undisputable claim. In fact, it would appear that this set of events is what Lueck alleges occurred, because he did eventually receive all his disability benefits. The state claim can be adjudicated without needing to reach the "merits" of any underlying labor dispute. The state court need not consider, much less resolve, whether A-C violated its insurance contract —and, hence, its labor agreement—by disputing Lueck's disability claim. Finally, the state claim remedies would be for the insured's injuries as recognized in *Anderson;*[10] the state remedy would not involve enforcement

The defendants argue that Lueck, as a union member, bargained away his right to seek a remedy for his bad faith claim. The defendants assert that the collective bargaining process contemplates giving up some rights in exchange for security and uniformity in treatment by employers pursuant to a labor agreement. While this is a valid point, we do not agree that collective bargaining necessarily means that employees surrender all their rights to legal redress for injury, except as provided by the labor agreement. To permit segments of this state's citizens to sign away their right to pursue a bad faith claim merely by being subject to a labor agreement would be an intolerable result. This is especially true where, as here, the legal right being pursued is not central to the collective bargaining agreement or the regulation of labor relations. We agree, however, that where specific disputes directly involve a labor agreement, the terms of the labor agreement and federal labor law will govern resolution of the issue.

[10] The Supreme Court in *Farmer* noted that damages assessed for the state law tort claim should remain separate from any related federal law claim. *Farmer v. Carpenters*, 430 U.S. at 305

of the terms of the labor agreement. Simply put, "[a]l-though the arguable federal violation and the state tort arose in the same factual setting, the respective contro-versies presented to the state and federal forums would not have been the same," *Sears, Roebuck & Co. v. Car-penters,* 436 U.S. at 196–97, because they involve separate and independent claims and remedies.

We recognize that there is some risk that the state bad faith action could touch on federal enforcement of the labor agreement. A finding of bad faith could constitute the basis for an unfair labor practice claim. However, the Supreme Court in *Farmer* noted that the state action should not "threaten *undue* interference with the federal regulatory scheme." *Farmer,* 430 U.S. at 302 (emphasis added). We do not believe permitting a bad faith action to proceed will *unduly* interfere with the federal regula-tory scheme. In the language of the Supreme Court, when "[v]iewed . . . in light of the discrete concerns of the federal scheme and the state tort law, that potential for interference is insufficient to counterbalance the legitimate and substantial interest of the State in protect-ing its citizens." *Id.* at 304.

The Supreme Court cases in this area demonstrate that " 'the decision to pre-empt . . . state court juris-diction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies' of permitting the state court [action] to proceed." *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. at 189, citing *Vaca v. Sipes,* 386 U.S. 171, 180 (1967).[11] We conclude

n. 13. Likewise, we caution that in this sort of case the jury should be instructed that it is to consider only the bad faith claim, not any alleged breach of contract claim, when determining the plaintiff's damages.

[11] The same general principle was recently stated by the Supreme Court in *Silkwood v. Kerr-McGee Corp.,* 52 U.S.L.W.

that permitting Lueck to proceed with a state bad faith action will advance substantial state interests without interfering with the enforcement of national labor policies in the area of insurance contracts arising from labor agreements. We hold that a state bad faith claim arising from an insurance contract may be brought even though the insurance contract is part of a labor agreement otherwise governed by federal labor law. The trial court erred in concluding that Lueck's bad faith claim was governed by federal labor law. Accordingly, we reverse the court of appeals and remand the case for trial.

The final issue is whether the court of appeals erred in finding that Aetna had no liability for bad faith because, as an administrator of the insurance contract, it had no fiduciary duty to act in good faith. By virtue of the contract between A-C and Aetna, Aetna became A-C's agent for purposes of administering A-C's insurance contract with Lueck. As an agent specifically hired to administer the insurance contract, Aetna is not "a stranger to the [insurance] contract and to the fiduciary relationship it signifies." See *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis. 2d 56, 73, 307 N.W.2d 256 (1981). As such, Aetna stands in the same relationship with Lueck

4043 (U.S. Jan. 10, 1984) (No. 81–2159). In *Silkwood* the Court held that the plaintiff's award of punitive damages in a state court was not preempted by federal nuclear regulatory law. The Court noted that Congress, in passing legislation regulating the nuclear power industry, did not forbid the states from providing state law remedies for injuries suffered while working at federally regulated nuclear plants. As the Court stated, "Congress assumed that traditional principles of state tort law would apply with full force unless they were expressly supplanted." *Id.* at 4048. Although *Silkwood* is factually distinguishable from this case, we believe that the principle of protecting legitimate state interests from federal preemption, unless specifically supplanted or in direct conflict with federal law or policy, is equally applicable to this case.

as does A-C and, therefore, has the same fiduciary duty as the primary insurer.[12] We hold that, even though the ultimate authority to approve or disapprove the payment of a claim rests with the primary insurer, the administrator still may be held liable if, in the administration of the claim, the administrator independently engages in conduct actionable under the tort of bad faith.

Because we have concluded that a fiduciary relationship exists between Lueck and Aetna, the issue of Aetna's liability must be determined by its conduct in managing Lueck's claim. In this case Aetna moved for summary judgment, in part on the grounds that the record showed it did not play any active role in the management of Lueck's disability claim. The circuit court granted summary judgment in Aetna's favor, but did so on other grounds. The court of appeals, however, independently reached this issue, deciding that Aetna had no liability for bad faith. In light of the fact that the circuit court had made no findings or decision on this issue and the fact that the plaintiff had filed an affidavit claiming that he needed to engage in further discovery in order to oppose Aetna's motion, we conclude that the court of appeals erred in deciding this issue. We reverse the court of appeals and remand this issue to the circuit court for further consideration of Aetna's summary judgment motion and the plaintiff's request to be permitted further discovery.

*By the Court.*—The decision of the court of appeals is reversed, and cause remanded for further proceedings consistent with this opinion.

---

[12] We emphasize that, even if Aetna is to be held liable along with A–C, Lueck has only one claim for bad faith against the defendants. He may not pursue separate actions against each defendant because each is jointly and severally liable for Lueck's damages arising from a single transaction or occurrence, namely, the handling of his disability claim.

STEINMETZ, J. (dissenting). I dissent from the result of the majority opinion and from its reasoning.

The bad faith claim in this case depends entirely on interpretation of the labor contract between the plaintiff, the union and Allis-Chalmers. In *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 73, 307 N.W.2d 256 (1981), we held: "The insurer's duty of good faith and fair dealing arises from the insurance contract and runs to the insured. No such duty can be implied in favor of the claimant from the contract since the claimant is a stranger to the contract and to the fiduciary relationship it signifies." The majority now abandons the holding in *Kranzush*. Because any duty allegedly violated by Allis-Chalmers in the present case was specifically created by the labor contract, *and would not exist absent* such contract, it must fall within the ambit of sec. 301 of the Labor Management Relations Act (LMRA), which governs labor agreements. Without the existence of the labor contract conferring disability benefits upon union members, there can be no action in this case based on a failure to pay such benefits. A finding of bad faith will necessarily be premised on a finding that a labor agreement, governed by federal law, has been violated. To do as the majority holds fragments federal labor law.

Section 301 of the LMRA provides the jurisdictional basis for any claim arising out of a contract between an employer and a labor organization. In addition to the right to maintain a sec. 301 action, an employee or union having a claim arising from a collective bargaining agreement, or believing that the employer has failed to honor the agreement in good faith, may file an unfair labor practice charge with the NLRA alleging a violation of the National Labor Relations Act (NLRA), 28 U.S.C. sec. 158(a)(5) and 158(d). Also, this plaintiff who asserts a claim arising from a labor contract has the choice of exhausting his contractual remedies and in-

stituting a lawsuit or filing a charge with the appropriate administrative agency. In either event, he has a federal claim arising under federal labor law.

If the plaintiff seeks a claim under sec. 301, he must exhaust his contractual remedies before instituting court action. Plaintiff did not so exhaust his remedies.

If plaintiff's claim is not a federal claim under sec. 301, but rather is a state law claim, then there are overriding considerations of federal labor policy that would require its dismissal.

The bad faith violation this plaintiff is asserting depends entirely on the labor contract since his rights and remedies do not exist but for the contract. Because the activities of which plaintiff complains are of the type prohibited by the NLRA, any state cause of action based on such activity is preempted by federal labor law, since it is of major concern to such law and policy. The mere existence of a state tort of bad faith does not mean that the tort is deeply rooted in local feeling and responsibility or that the state's interest is necessarily greater than the interest in federal uniformity. There can be no finding of bad faith here without an antecedent finding that the underlying contract has been violated. It is this agreement which created the duty of good faith that plaintiff claims was violated, and it is this agreement that must be interpreted as the threshold issue.

For these reasons, I would affirm the decision of the court of appeals dismissing the complaint as to Allis-Chalmers Corporation. For the same reasons, I would affirm the court of appeals as to dismissal of the complaint as to Aetna Life and Casualty Company.

The majority has found as a matter of law that Aetna has a fiduciary relationship with Allis-Chalmers so that "Aetna stands in the same relationship with Lueck as does A-C and, therefore, has the same fiduciary duty as the primary insurer." (*Supra,* at 576.) That holding by the

majority on this inadequate factual record as to the relationship between Aetna and A-C is not possible. Even the plaintiff asked only for more discovery to determine fully the relationship between Aetna and A-C. In regard to Aetna, at the very least, the court should have remanded the case for further discovery.

I dissent.