(No. 60446.—

DAVID N. PRICE, Appellant, v. CARMACK DATSUN, INC., Appellee.

*Opinion filed October 18, 1985.—Rehearing denied December 2, 1985.*

SIMON, J., dissenting.

Glenn A. Stanko, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Bruce Meachum, of Meachum & Meachum, of Danville, for appellee.

JUSTICE WARD delivered the opinion of the court:

The question here is whether the complaint of David N. Price stated a cause of action for retaliatory discharge. The circuit court of Vermilion County held that it did, and the defendant, Carmack Datsun, Inc. (Carmack), appealed to the appellate court. That court reversed (124 Ill. App. 3d 979), and we granted the plaintiff's petition for leave to appeal under our Rule 315 (94 Ill. 2d R. 315).

The plaintiff's complaint against Carmack, filed January 5, 1982, contained these allegations: The defendant Carmack was in the business of selling new and used automobiles in Danville. Price was a sales representative for Carmack from December 1977 until May 1978, when he left to establish a locksmith business. In July 1980, Price returned to Carmack as a full-time sales representative. On August 18, 1980, Price was in an automobile accident and suffered two fractured ribs, a fractured pelvis and a fractured coccyx. He was hospitalized for three weeks and used crutches for two months thereafter. As an employee of Carmack, the plaintiff was covered under

Carmack's group health insurance plan with Massachusetts Life Insurance Company. The plaintiff's medical expenses were more than $7,000. When Price returned to work on November 26, 1980, Donald Carmack, the president of Carmack, asked him whether he was going to submit a claim under the health insurance plan and sought to discourage him from filing a claim. Three days later, the plaintiff informed Carmack that he intended to file a claim. Carmack informed the plaintiff at that time that he was discharged. The plaintiff alleged that his filing the claim was the ground for his discharge.

The jury found in favor of the plaintiff and awarded him $5,525 in compensatory damages and $2,762 in punitive damages. The appellate court, in reversing, held that the plaintiff had not stated a cause of action for retaliatory discharge.

The plaintiff contends that the health insurance provisions of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 613 *et seq.*) show that there is a public policy against the discharge of employees for filing health insurance claims. The defendant's position is that the filing of a health insurance claim is founded on a private contractual right and is not a matter supported by public policy.

The accepted general rule is that in an employment at will there is no limitation on the right of an employer to discharge an employee. An exception to this, however, arises where there has been a retaliatory discharge of the employee. A cause of action for retaliatory discharge is recognized by this court only when the employee's discharge is in violation of a "clearly mandated public policy." (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128-30.) In *Palmateer*, this court discussed the meaning of "clearly mandated public policy":

"There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." 85 Ill. 2d 124, 130.

The tort of retaliatory discharge was first recognized and applied by this court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, where it was alleged that the employee had been discharged in retaliation for having filed a workers' compensation claim. This court determined that the Workers' Compensation Act showed a strong public policy in favor of the exercise of an employee's rights under the statute. This policy would be frustrated if employers would be permitted to discharge employees for filing claims for injuries with impunity. Public policy required that the employer be made additionally liable for the wrongful discharge. In *Palmateer*, this court held there was a cause of action for an employee's discharge in retaliation for furnishing police with information regarding possible criminal conduct of a fellow employee. We considered that "[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens. *** Public policy favors [the employee's] conduct in volunteering information to the law-enforcement agency." 85 Ill. 2d 124, 132-33.

The question here is whether there is a clearly mandated public policy regarding the plaintiff's health insurance coverage to support a cause of action for retaliatory discharge. The plaintiff notes that employers

commonly provide group health insurance for employees and thus a great many workers in this State have this coverage. To demonstrate a clearly mandated public policy to prohibit the discharge of an employee for the filing of a health insurance claim, the plaintiff cites the sections of the Insurance Code that regulate health insurance. (See Ill. Rev. Stat. 1981, ch. 73, pars. 964, 982d.) The entire insurance industry, however, is a regulated industry. The Insurance Code regulates all types of insurance and all policies issued are required to have State approval. It should be noted, too, that the Code was designed to govern operations of insurance companies, not insureds, such as the defendant. The filing of a claim under a policy of insurance is pursuant to an individual contract between the insurer and the insured. We consider that the discharge of an employee for filing a claim under a policy in which he is a beneficiary does not violate a clearly mandated public policy. This court in *Palmateer* said that for a matter to be a matter of "clearly mandated public policy" it "must strike at the heart of a citizen's social rights, duties, and responsibilities *** ." (85 Ill. 2d 124, 130.) The matter here is one of private and individual grievance rather than one affecting our society.

For the reasons given, the judgment of the appellate court, reversing the circuit court, is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, dissenting:

I respectfully differ from the conclusion reached by my colleagues. In my opinion, this matter affects our society. As part of our public policy we encourage employers to provide health insurance plans for their employees so that in case of illness or injury they will not become destitute or public charges. Federal tax law provides employers with a deduction if their group health policies co-

ordinate with Federal medical assistance. (26 U.S.C.A. sec. 162(i) (Supp. 1985); S. Rep. No. 139, 97th Cong., 1st Sess. 496 (1981).) Our General Assembly has allowed an employer deduction under identical circumstances. (Ill. Rev. Stat. 1981, ch. 120, par. 2—203(e)(1).) This State and Federal policy of dovetailing public and private health coverage is frustrated by allowing employers to take the group health deduction while "dissuading" employees from filing group health claims.

Today, most employees regard the health coverage which their employers provide as a necessary and important part of their compensation. The government encourages employees to seek this form of compensation. (26 U.S.C.A. sec. 106 (1984) (premiums paid to employer-provided health plans excluded from employees' gross income).) Discharging an employee for filing a claim under employer-provided health coverage is similar to discharging an employee because he refuses to work for less than the minimum wage. This strikes at the heart of an employee's social rights; it affects all employees if an employer is permitted to provide health insurance and yet prevent covered employees from filing claims in order to advance the interests of the employer.

Additionally, the public policy of this State dictates that insured individuals should receive, without delay or harassment, the benefits for which they have contracted and upon which they rely. To promote this policy, the General Assembly has provided in section 11 of the Illinois Insurance Code for the recovery of legal fees and specified punitive damages where an insurer has delayed payment through "vexatious and unreasonable" means. (Ill. Rev. Stat. 1983, ch. 73, par. 767.) In some cases the appellate court has punctuated this policy by recognizing a tort cause of action through which an insured may recover compensatory damages for actions taken by an insurance company in bad faith. *E.g., Hoffman v. Allstate*

*Insurance Co.* (1980), 85 Ill. App. 3d 631; see *Lueck v. Aetna Life Insurance Co.* (1984), 116 Wis. 2d 559, 342 N.W.2d 699, *rev'd on other grounds* (1985), 471 U.S. ___, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (the State has an interest in protecting an insured from oppressive treatment by the insurance company); 3 Dooley, Modern Tort Law sec. 38.10 (1984).

In this case, Carmack Datsun stands in a similar relationship toward the plaintiff as does plaintiff's health insurer. Not only has the employer provided plaintiff with an insurance policy and been paid by plaintiff's services for that protection, but the employer is also in a position to dictate terms by which an employee can receive the emergency assistance for which that employee has paid. The rationale of section 11 and *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, cannot be explained solely by reference to the often superior economic position of the insurance company. What distinguishes an insurer from other economically powerful concerns is that the insurer exploits its superior position at the same time disaster has struck the insured and the latter can least afford delay and litigation. This policy is frustrated by allowing the employer to intervene and occupy the position of leverage from which the legislature has dislodged insurers. What our General Assembly and the appellate court have given with one hand, this court is taking with the other. *Harless v. First National Bank* (W. Va. 1978), 246 S.E.2d 270.

The public policy of this State is to encourage employers to provide health coverage to their employees and to insure that those entitled to insurance proceeds shall enjoy those proceeds without harassment from parties temporarily promoted to unconscionable bargaining positions by the inherent necessity of the insured's situation. The court should recognize plaintiff's complaint, not to expand the exception to the employment-at-will

doctrine, but as a cause of action based upon an unconscionable abuse of economic power in derogation of public policy. That is the real essence and basis of the tort of retaliatory discharge. Since the plaintiff has not alleged a breach of his at-will employment contract, I do not reach the merits of such a claim.

Because I believe the court's decision authorizes abusive exercise of the power to discharge employees, without affording any protection to the public policy of this State, I dissent.