PATRICIA McCLUSKEY, Plaintiff-Respondent, v. CLARK OIL & REFINING CORPORATION, Defendant-Petitioner.

First District (1st Division)    No. 85—2710

Opinion filed September 15, 1986.

Charles M. Chadd, of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for petitioner.

Michael Childress, of Robert W. Karr & Associates, Ltd., of Chicago, for respondent.

JUSTICE O'CONNOR delivered the opinion of the court:

This is a permissive interlocutory appeal from the trial court's order denying defendant's motion to dismiss plaintiff's claim for retaliatory discharge. We reverse.

Plaintiff, Patricia McCluskey, brought this action against her employer, Clark Oil and Refining Corporation, alleging in count I of her complaint that she was discharged from employment solely because she married a co-worker, and that such discharge was in violation of the laws and statutes of this State, as well as public policy. Defendant filed a motion to dismiss plaintiff's claim, which the trial court denied on May 8, 1985. Shortly thereafter, the supreme court issued its decision in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 478 N.E.2d 1354. The trial court denied defendant's motion to reconsider in light of the *Barr* decision, but certified the following question for interlocutory appeal under Supreme Court Rule 308(a):

"Whether there is a sufficiently mandated public policy of the State of Illinois as expressed in the Illinois Marriage and Dissolution of Marriage Act, Ill. Rev. Stat. ch. 40, sec. 101 et seq.,

other statutes of the State of Illinois, case law, and the inherent right of an individual to marry the person of his or her choice on which to base an action for retaliatory discharge."

We believe the court's holding in *Barr*, and the reasoning employed by that court, to be dispositive of the issue now before us. Plaintiffs in *Barr* had been employed by the defendant as construction foremen. Plaintiffs claimed that they were discharged for "intimidation of fellow employees" after they had peaceably informed fellow workers of layoff procedures being utilized by the defendant, and alleged that their discharge infringed on certain constitutional and statutory rights, including freedom of speech, due process, equal protection and privacy. While plaintiffs conceded that the constitutional and statutory provisions encompassing these rights were limitations only on the power of government, they nonetheless claimed that the provisions themselves were "indicators of public policy" and that a violation of these rights by anyone thus constituted a violation of public policy.

The supreme court rejected plaintiffs' claim stating:

"The fact that a constitutional or statutory provision is cited in the complaint, however, does not give rise to a retaliatory-discharge cause of action. The test for determining if the complaint states a valid cause of action is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.) The application of this test necessarily involves determining what the public policy is behind the enactment or adoption of the particular provision. The public policy underlying a statutory or constitutional provision is found by examining the history, purpose, language and effect of the provision." *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 527, 478 N.E.2d 1354.

The court went on to note that the public policy of this State concerning the protection of constitutional and civil rights in the employer-employee relationship is expressed in the Illinois Constitution (Ill. Const. 1970, art. I, secs. 17, 19) and in the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*), and that there is nothing in either the Constitution or the Act to mandate the inclusion of the right of free speech into those rights which are applicable to the employer-employee relationship. The court then concluded that the public policy which was mandated by the provisions cited in the plaintiffs' complaint was that the power of government, not private individuals, be restricted, and that the subject provisions did not,

therefore, mandate any public policy which was violated by the discharge of plaintiffs. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 528, 478 N.E.2d 1354.) See also *Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 485 N.E.2d 359 (complaint for retaliatory discharge by plaintiff who had filed claim under defendant-employer's group health insurance plan dismissed where purpose of the Illinois Insurance Code was found to govern operations of insurance companies, and not insureds such as defendant-employer); compare *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372 (upholding cause of action for retaliatory discharge for refusal to work under conditions which violated safety regulations applicable to defendant-employer).

The court in *Barr* also discussed its earlier decision in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, a case principally relied on by plaintiff here. In *Palmateer*, plaintiff-employee was allegedly discharged for providing the police with information concerning possible criminal conduct by a co-employee and for assisting the police in their investigation of the allegations. The court found a cause of action for retaliatory discharge to exist in order to insure that the public policy behind the enactment and enforcement of the Criminal Code, which necessarily favored the exposure of violations of the Code, would not be frustrated. (85 Ill. 2d 124, 132-33, 421 N.E.2d 876.) The *Barr* court went on to deny the assertion by plaintiffs there that the court had, by *Palmateer* and other of its earlier decisions, rejected a narrow interpretation of the tort of retaliatory discharge in favor of a more expansive interpretation of the tort. *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354.

Turning to the instant case, we must now determine whether plaintiff's discharge violated a clearly mandated public policy, as set forth in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*) (Act), other statutes, relevant case law or constitutional provisions.

Plaintiff contends that such clearly mandated policy is embodied in the Act, which provides in relevant part:

> "Sec. 102. Purposes—Rules of Construction. This Act shall be liberally construed and applied to promote its underlying purposes, which are to:
>
> (1) provide adequate procedures for the solemnization and registration of marriage;
>
> (2) strengthen and preserve the integrity of marriage and safeguard family relationships;

(3) promote the amicable settlement of disputes that have arisen between parties to a marriage;

(4) mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage;

(5) make reasonable provision for spouses and minor children during and after litigation; and

(6) eliminate the consideration of marital misconduct in the adjudication of rights and duties incident to the legal dissolution of marriage, legal separation and declaration of invalidity of marriage; and

(7) secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." Ill. Rev. Stat. 1985, ch. 40, par. 102.

The Historical and Practice Notes to the Act are instructive. They state the goal of the new legislation, which was:

"[T]o provide for Illinois a new law which would not make it easier to divorce but which would remove abuses and much of the acrimony incident to the process of divorcing. At the same time, the new legislation was designed to reform the balance of the laws pertaining to marriage, property disposition, spousal and child support, child custody, and other areas of long-needed reform. ***" (Ill. Ann. Stat., ch. 40, Historical and Practice Notes, at XXI (Smith-Hurd 1985).)

The Notes also indicate:

"Subsection 2 advocates the strengthening and preservation of marriage with the intent of safeguarding family relationships. *** ('The policy of the Act gives the State a strong continuing interest in the institution of marriage and prevents the marriage relation from in effect becoming a private contract terminable at will.') ***" Ill. Ann. Stat., ch. 40, par. 102, Historical and Practice Notes, at 9 (Smith-Hurd 1985).

We find that the Act, which is clearly intended to regulate the parties to a marriage and divorce and not intended to regulate the conduct of employers, simply does not provide any basis for a claim of retaliatory discharge.

Similarly, we have examined the relevant case law and find no support for plaintiff's position in either judicial decisions interpreting the Act or in the long standing judicial decisions concerning restraints on marriage. While our highest court has long recognized that personal decisions relating to marriage and family life are protected by the fundamental right to privacy (see, *e.g., Loving v. Virginia* (1967),

388 U.S. 1, 12, 18 L. Ed. 2d 1010, 1018, 87 S. Ct. 1817, 1824), not every classification which relates in any way to the incidents of marriage necessarily involves the intensely personal decisions which the court has found to be fundamental, and reasonable regulations that do not significantly interfere with decisions to enter the marital relationship may legitimately be imposed. *Moran v. Beyer* (7th Cir. 1984), 734 F.2d 1245; *Nicpon v. Nicpon* (1986), 145 Ill. App. 3d 464, 466, citing *Califano v. Jobst* (1977), 434 U.S. 47, 54 L. Ed. 2d 228, 98 S. Ct. 95.

Based on our finding that there is no sufficiently mandated public policy in this State, as expressed in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*), other statutes, case law or constitutional provisions, on which to base an action for retaliatory discharge, the decision of the circuit court denying the defendant's motion to dismiss count I of the complaint for failure to state a cause of action is reversed and the cause is remanded with directions to enter an order dismissing count I.

Reversed and remanded with directions.

CAMPBELL and BUCKLEY, JJ., concur.