**Richard NEWBY, Plaintiff,**

v.

**WAL–MART STORES, INC., C.T. Corporation System, Defendant.**

No. 85–3444.

United States District Court, C.D. Illinois, Springfield Division.

May 8, 1987.

Richard Shaikewitz, Alton, Ill., for plaintiff.

Edward J. Cunningham, Springfield, Ill., for defendant.

## OPINION ORDER

MILLS, District Judge:

Plaintiff's complaint is totally without merit.

Summary judgment for Defendant is allowed.

Richard Newby, a disgruntled employee, brings this diversity action under 28 U.S.C. § 1332 against his former employer, Wal-Mart Stores, alleging the company violated Illinois public policy when it discharged him after several garnishments were entered against his wages.

Wal-Mart does not deny the complaint's factual basis; rather, Defendant supplements it with affidavits and moves for summary judgment pursuant to Fed.R.Civ.P. 56.

Although Plaintiff notably fails to submit counter-affidavits or cite any applicable authority, he nevertheless insists that a jury must declare the State's public policy.

Newby's argument is frivolous.

The Court decides this cause in favor of his employer as a matter of law.

### Background

In October 1980, Wal-Mart employed Plaintiff at will in its Carlinville, Illinois, store. During his service, Defendant counseled Newby on various dates regarding its receipt of his creditors' wage deduction summonses. Yet, over a three-year period immediately prior to Plaintiff's termination, multiple garnishments from eight different creditors of Newby were served upon and processed by his employer. *See* Ill.Rev. Stat. ch. 110, ¶¶ 12–801 to 819 (1985).

Finally, on February 1, 1985, Wal-Mart instructed Newby that if it received any further wage deduction orders, he would be discharged. At that time, the store was processing garnishments from the Bank of Commerce, Dr. Sally DeGrano, and Household Finance Company. When the Defend-

ant received another garnishment on February 4, 1985, from the Springfield Pediatric Clinic, it informed Newby of his termination due to multiple garnishments on multiple debts.

Despite his recurring indebtedness, however, Plaintiff contends that he could not have possibly prevented the February 4 garnishment since it followed so closely to his employer's ultimatum of February 1. Moreover, he asserts the final wage deduction order was simply a renewal of an earlier garnishment served upon his employer, and not an additional one for which he could be terminated. *See* Ill.Rev.Stat. ch. 110, ¶ 12–808(b) (1985). But even though the Court accepts Newby's factual allegations as true, his legal conclusions nevertheless fail. Plaintiff does not hold a cognizable claim against the Defendant.

Under Fed.R.Civ.P. 56(c), summary judgment should be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Such is the case here. Viewing the evidence in a light most favorable to Plaintiff, Defendant is entitled to a judgment as a matter of law.

### Discussion

Despite Newby's assertion to the contrary, the public policy of Illinois is to be found in the State's constitution, statutes, and judicial decisions, not in a jury of his peers. Although no precise definition of the term exists, public policy may be said to concern "what is right and just and what affects the citizens of the state collectively." *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 130, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981); *La Buhn v. Bulkmatic Transport Co.,* 644 F.Supp. 942, 947 (N.D.Ill.1986). Consequently, the issue is clearly for a Court to decide. *See Dodge v. Stine,* 739 F.2d 1279, 1282 n. 1 (7th Cir.1984) (application of public policy exception in negligence action is a question

of law); *Local No. P–1236 v. Jones Dairy Farm,* 680 F.2d 1142 (7th Cir.1982) (district court had authority to vacate arbitration award which it believed was contrary to public policy); *Boyar-Schultz Corp. v. Tomasek,* 94 Ill.App.3d 320, 49 Ill.Dec. 891, 418 N.E.2d 911 (1st Dist.1981) (whether a contract is contrary to public policy is a question of law). To suggest otherwise is absurd. Public policy must rest upon a uniform body of principles promulgated by experienced lawmakers, not individual juries' potentially inconsistent concepts as to right and wrong. *Cf. Gould v. Campbell's Ambulance Service, Inc.,* 111 Ill.2d 54, 94 Ill.Dec. 746, 488 N.E.2d 993 (1986) (plaintiffs had no cause of action for retaliatory discharge where relevant statutory provisions and ordinances failed to show a violation of any public policy).

Admittedly, Illinois courts recognize a cause of action for retaliatory discharge where an employee's dismissal is in violation of a clearly mandated public policy. *Price v. Carmack Datsun, Inc.,* 109 Ill.2d 65, 67, 92 Ill.Dec. 548, 549, 485 N.E.2d 359, 360 (1985). The common law doctrine, however, that an employer may discharge an employee-at-will for any cause or for no cause is otherwise still the law in Illinois. *Barr v. Kelso-Burnett Co.,* 106 Ill.2d 520, 525, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985). "The termination, then, may permissibly be for a good reason, a bad reason, or no reason at all." *Loucks v. Star City Glass Co.,* 551 F.2d 745, 747 (7th Cir.1977). *See also Zick v. Verson Allsteel Press Co.,* 623 F.Supp. 927, 930–31 (N.D.Ill. 1985).

In this instance, Newby does not contest his employee-at-will status with the Defendant. Instead, he maintains that his position was not terminable at will "for the alleged retaliatory purpose." *Loucks,* 551 F.2d at 747. Thus, the Court need only ascertain Illinois public policy with respect to the discharge of an employee following garnishment of his wages.

The indisputable answer lies in the Illinois Civil Practice Act, Ill.Rev.Stat. ch. 110, ¶ 12–818 (1985): "No employer may discharge or suspend any employee by reason of the fact that his or her earnings have been subjected to a deduction order for *any one indebtedness.*" (emphasis added). Apparently, an Illinois state court has yet to interpret the law. Nevertheless, applying the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the law itself, this Court finds Wal-Mart to have acted well within the confines of the State's public policy.

Unquestionably, the Illinois General Assembly in enacting ¶ 12–818 balanced the respective interests of employers and their employees, and chose to protect only those workers whose wages are garnished for one debt. By giving debtors limited, incomplete protection from discharge, the legislature elected not to burden employers with those chronically unable to manage their financial affairs. Employees with many debts and garnishments on their records may properly be exposed to termination, while workers falling into debt and experiencing garnishment for the first time will find protection under Illinois law.

Unfortunately, Plaintiff falls within the former category. The undisputed facts show Newby's earnings were subjected to several deduction orders for numerous debts. Thus, Wal-Mart justifiably released Plaintiff regardless of the timing or nature of the February 4 wage deduction order. The former employee's attempt to shield himself from termination under the guise of Illinois public policy must falter.

Finally, a *warning* to Plaintiff's counsel: The present complaint appears to be warranted neither by existing law nor any good faith argument for an extension or modification of existing law. Nowhere in Plaintiff's submissions does he address the legislative concerns of ¶ 12–818. This action then is arguably ripe for Rule 11 sanctions. Fed.R.Civ.P. 11.

Since no case law is present, however, interpreting the relevant statute, the Court in this instance gives counsel the benefit of the doubt.

Nevertheless, counsel for Plaintiff is admonished that the docket of this Court is extremely large. Cases which have no

chance of succeeding on the merits simply clog the docket and waste the time of everyone involved: the judge, his staff, the Clerk's staff, opposing counsel, and—indeed—the parties litigant.

Counsel is directed to heed this warning. Next time, the Court will not be so understanding.

*Ergo*, Defendant's motion for summary judgment is ALLOWED.

Cause DISMISSED.

Case CLOSED.