2022 IL App (1st) 211224

No. 1-21-1224

Opinion filed September 22, 2022

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TANJA CRETELLA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 4742 |
| | ) | |
| AZCON, INC., d/b/a Azcon Metals, Inc., | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Tanja Cretella, filed this action against her former employer, Azcon, Inc.,

d/b/a Azcon Metals, Inc., alleging claims of retaliatory discharge and violation of section 20 of the

Whistleblower Act (740 ILCS 174/20 (West 2020)). Plaintiff's retaliatory discharge claims were

based on both the tort and an implied private right of action under section 224.1 of the Illinois

Insurance Code (215 ILCS 5/224.1 (West 2020)), alleging that defendant unlawfully terminated

her employment when she exercised her right under section 224.1 to refuse to consent to defendant

purchasing insurance coverage on her life and receiving the proceeds in the event of her death.

¶ 2    The circuit court granted defendant's motion to dismiss the complaint for failure to state a cause of action.

¶ 3    On appeal, plaintiff argues that she sufficiently stated causes of action for retaliatory discharge because (1) Illinois public policy disfavors retaliation for an employee's refusal to consent to life insurance coverage when the proceeds go to the employer in the event of the employee's death and (2) a private cause of action is implied under section 224.1 of the Insurance Code.

¶ 4    For the reasons that follow, we reverse in part and affirm in part the judgment of the circuit court.

¶ 5                               I. BACKGROUND

¶ 6    Plaintiff filed a three-count complaint against defendant, alleging that she had worked as defendant's human resource director from about October 2013 through June 7, 2018. She alleged that she was presented with a consent to life insurance coverage form that was represented to her as being necessary to meet certain liquidity needs related to the employee stock ownership plan and other capital needs of the company. She also alleged that she refused to sign the form and defendant fired her on June 7, 2018, for refusing to consent to company-owned life insurance (COLI). She alleged against defendant claims of (1) retaliatory discharge in violation of section 224.1 of the Insurance Code, (2) violation of section 20 of the Whistleblower Act for refusing to participate in illegal activity, and (3) common law retaliatory discharge.

¶ 7    Defendant moved to dismiss plaintiff's complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)), arguing that plaintiff failed to state an actionable claim of statutory retaliatory discharge because the Insurance Code does not provide a

private right of action for retaliatory discharge for violation of section 224.1 of the Insurance Code and an implied private right of action is not appropriate under Illinois law. Regarding plaintiff's claim under the Whistleblower Act, defendant argued that signing a consent to life insurance coverage form did not violate the Insurance Code or any other law. Regarding plaintiff's common law retaliatory discharge claim, defendant argued that her claim did not fit under either of the two recognized categories—*i.e.*, whistleblowing activities or the exercise of rights under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2020))—for Illinois's narrow common law exception to the at-will employment doctrine.

¶ 8     On September 8, 2021, the trial court heard argument on defendant's motion to dismiss. The trial court granted the motion and dismissed all three counts of plaintiff's complaint with prejudice. The trial court ruled that plaintiff failed to state a claim of retaliatory discharge based on an implied right of action under section 224.1 of the Insurance Code because she was not a member of the primary class for whose benefit section 224.1 was enacted, since the purpose of the Insurance Code was to regulate insurance companies and not to protect employees. The court also ruled that plaintiff was not a whistleblower because being asked to consent to employer-owned life insurance coverage was not illegal or misconduct. Finally, the court ruled that plaintiff failed to state a claim of common law retaliatory discharge because her discharge did not violate a clear mandate of public policy.

¶ 9     Plaintiff timely appealed the dismissal of her statutory and common law retaliatory discharge claims but does not appeal the dismissal of her whistleblower claim.

¶ 10                                    II. ANALYSIS

¶ 11    We review *de novo* an order granting a motion to dismiss pursuant to section 2-615 of the Code and may affirm the trial court's dismissal for any reason supported by the record. *Chang Hyun Moon v. Kang Jun Liu*, 2015 IL App (1st) 143606, ¶ 11. A section 2-615 motion to dismiss tests the legal sufficiency of a complaint, *i.e.*, whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). When ruling on a section 2-615 motion to dismiss, the court must accept as true all well-pled facts in the complaint and reasonable inferences drawn therefrom. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). We do not, however, take mere conclusions of law or fact contained within the challenged pleading as true unless they are supported by specific factual allegations. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991).

> "A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts sufficient to bring his or her claim within the scope of the cause of action asserted." *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 499 (2009).

¶ 12                                A. Preliminary Matters

¶ 13    Defendant asks this court to disregard plaintiff's statement that she was fired in retaliation for her refusal to consent to life insurance coverage as an improper argumentative legal conclusion made without citation to the record. We deny defendant's request but acknowledge defendant's position that it does not concede that plaintiff's discharge was retaliation. However, for purposes

of a section 2-615 motion to dismiss, the court must accept as true all well-pled facts in the complaint and reasonable inferences drawn therefrom. *Bryson*, 174 Ill. 2d at 86. Plaintiff's allegation that she was fired in retaliation for refusing to consent to life insurance coverage is one of the central allegations of her complaint and is properly pled.

¶ 14    Defendant also asks this court to disregard an insurance form and e-mail that were attached for the first time to plaintiff's memorandum opposing defendant's motion to dismiss, filed before the trial court. Defendant argues that the insurance form and e-mail are outside of the allegations of the complaint and attachments thereto. "In ruling upon a 2-615 motion, a trial court may consider *only the allegations of the complaint* [citation] and may not consider other supporting material [citation]." (Emphasis in original.) *Id.* at 91. The circuit court properly relied only on the allegations of the complaint in dismissing this lawsuit under section 2-615. We also will rely only on the allegations of the complaint and thus grant defendant's request to disregard the insurance form and e-mail.

¶ 15                    B. Common Law Retaliatory Discharge

¶ 16    Plaintiff argues that Illinois public policy disfavors an "Illinois citizen-insured" from being discharged for exercising her right not to consent to have COLI coverage taken out on her life, with the proceeds to go to the employer upon her death, even after she is no longer employed. Plaintiff argues that the plain language and legislative history of section 224.1 of the Insurance Code provides the public policy behind the statute, which seeks to protect employees from being fired for refusing to consent to exorbitant insurance policies employers attempt to obtain on employees' lives in what constitutes an improper wager policy to gamble on employees' lives.

¶ 17    Defendant argues that plaintiff's claim is not premised on a clear mandate of public policy, COLI policies are not contrary to Illinois public policy, no cases have extended the tort of retaliatory discharge to factual allegations similar to the allegations at issue in this case, and this is an employer-employee dispute that is in the nature of a private and individual grievance rather than a matter affecting our society and striking at the heart of a citizen's social rights, duties, and responsibilities.

¶ 18    Section 224.1 of the Insurance Code provides, in pertinent part:

"Notwithstanding any other Section of this Code, an employer or an employer sponsored trust for the benefit of its employees has an insurable interest in the lives of the employer's directors, officers, managers, nonmanagement employees, and retired employees and may insure those lives on an individual or group basis *with the consent of the insured. The consent requirement will be satisfied if the insured is provided written notice of the coverage and does not reject such coverage within 30 days of receipt of such notice*. The extent of the employer's or the trust's insurable interest for nonmanagement and retired employees shall be limited to an amount commensurate with the employer's projected unfunded liabilities to nonmanagement and retired employees for welfare benefit plans ***. An insurable interest must exist at the time the contract of life or disability insurance becomes effective, but need not exist at the time the loss occurs. *An employer shall not retaliate in any manner against an employee or a retired employee for refusing consent to be insured*. The proceeds of any policy or certificate issued pursuant to this Section are exempt from the claims of any creditor or dependent of the insured. As used herein, 'employer' means an individual, sole proprietorship, partnership, firm, corporation,

association, or any other legal entity that has one or more employees and is legally doing business in this State." (Emphases added.) 215 ILCS 5/224.1 (West 2020).

¶ 19    In Illinois, "a noncontracted employee is one who serves at the employer's will, and the employer may discharge such an employee for any reason or no reason." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994). However, an exception to this general rule of at-will employment arises where there has been a retaliatory discharge of the employee. *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1985). This court has recognized a limited and narrow cause of action for the tort of retaliatory discharge. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991). To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) the discharge violates a clear mandate of public policy. *Id.*; *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 134 (1981). Surveying many cases from across the country, the Illinois Supreme Court in *Palmateer* discussed the meaning of "clearly mandated public policy." *Palmateer*, 85 Ill. 2d at 130.

"There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Id.*

Merely citing a constitutional or statutory provision in a complaint will not give rise to a retaliatory discharge cause of action. *McGrath v. CCC Information Services, Inc.*, 314 Ill. App. 3d 431, 440 (2000).

¶ 20    Numerous decisions of this court have maintained the narrow scope of the retaliatory discharge action. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 19-20 (1998) (collecting cases). "The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy." *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 525 (1985); see also *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 467 (1999) (the Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge"). Illinois has recognized the tort of retaliatory discharge when the discharge stems from exercising rights pursuant to the Illinois Workers' Compensation Act or where the discharge is for certain activities referred to as "whistleblowing." *Irizarry v. Illinois Central R.R. Co.*, 377 Ill. App. 3d 486, 490-91 (2007). Plaintiff's claim does not fall into either of these two categories.

¶ 21    To support her claim of a clearly mandated public policy against the alleged retaliation that occurred in this case, plaintiff cites the floor debates prior to section 224.1's enactment, when members of the Illinois Senate discussed the notice that the employer would be required to give the employee and the importance of the employee's consent to the COLI coverage. See 87th Ill. Gen. Assem., Senate Proceedings, June 23, 1992, at 110 (statements of Senator Cullerton). Senator Cullerton explained that, at the request of the Department of Insurance, the bill had been amended from requiring the employee's written consent to instead requiring the employee to reject the coverage within 30 days of receiving written notice of the proposed coverage from the employer.

*Id.* Senator Hawkinson expressed concern about the amendment and requested assurance that the notice to the employee would not be an easily overlooked paragraph in an insurance policy or an employee handbook. *Id.* at 111-12 (statements of Senator Hawkinson). Senator Cullerton responded that the goal of the bill was to help the insured, *i.e.*, the employee, by providing "health benefits for that person after they retire." *Id.* at 112 (statements of Senator Cullerton). Senator Schuneman asked Senator Cullerton to explain what happened to the provision that required the employee's prior consent "for this new insurable interest feature to be legalized in Illinois." *Id.* at 113 (statements of Senator Schuneman). Senator Cullerton stated that he would ask the director of the Department of Insurance why he wanted this amendment and took the bill "out of the record." *Id.* (statements of Senator Cullerton).

¶ 22     We recognize the importance the legislature placed on protecting the right of a prospective insured to freely consent to COLI coverage. However, by stating in section 224.1 that employers have an insurable interest in the lives of their employees, the legislature recognized the benefits of employers obtaining COLI coverage, which can be used to either indemnify the employer for the costs of replacing a key employee who dies or becomes disabled or finance the cost of a stock redemption agreement or deferred compensation plan, or finance broad-based welfare benefit plans. See Nat'l Ass'n of Ins. Comm'rs, Guidelines on Corporate Owned Life Insurance 602-1 (April 2005), https://content.naic.org/sites/default/files/inline-files/MDL-602.pdf [https://perma.cc/BQ95-QLGP]. Clearly, COLI coverage is legal in Illinois. Moreover, to protect employees, the legislature subjected the employer's insurable interest in a current or retired employee's life to the requirements of obtaining the employee's consent and not retaliating against the employee in any way if she refuses to give her consent.

¶ 23    The supreme court's stated reluctance to expand the tort of retaliatory discharge militates against creating an exception here. Accordingly, we affirm the judgment of the circuit court that dismissed plaintiff's common law retaliatory discharge claim based on her refusal to consent to COLI coverage.

¶ 24                              C. Implied Right of Action

¶ 25    Plaintiff argues that the circuit court improperly dismissed her claim of an implied right of action for defendant's purported violation of section 224.1 of the Insurance Code for discharging plaintiff based on her refusal to consent to defendant obtaining and being the beneficiary of life insurance coverage on plaintiff's life.

¶ 26    In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature, and all other rules of statutory construction are subordinated to this cardinal principle. *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507 (2003). The plain language of the statute is the best indicator of the legislature's intent. *Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 591 (2002). When the statute's language is clear, it will be given effect without resort to other aids of statutory construction. *Petersen v. Wallach*, 198 Ill. 2d 439, 445 (2002). We review issues of statutory interpretation *de novo*. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004).

¶ 27    The plain language of section 224.1 does not articulate any precise relief for an employee who suffers retaliatory action in violation of this provision. Nor does any other provision of the Insurance Code expressly provide employees with the right to pursue an action for damages under section 224.1. Although the Insurance Code lacks specific statutory language granting a private right of action, a court may determine that a private right of action is implied in the statute. See

*Metzger*, 209 Ill. 2d at 35; *Fisher*, 188 Ill. 2d at 460. Courts consider four factors in determining if a private right of action may be implied from a statute.

> "Implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher*, 188 Ill. 2d at 460.

Whether a private right of action is implied in a statute presents a question of law that we review *de novo*. *Metzger*, 209 Ill. 2d at 34. A court should use caution in implying a private right of action because, in doing so, it is assuming the policy-making authority more appropriately exercised by the legislature. *Moore v. Lumpkin*, 258 Ill. App. 3d 980, 989 (1994).

¶ 28                                              1. Class Member

¶ 29     Regarding the first factor, plaintiff argues that this court's analysis of the class member factor should focus specifically on section 224.1, instead of looking at the purpose of the Insurance Code as a whole. To support this proposition, plaintiff contends that the introductory phrase "[n]otwithstanding any other Section of this Code," clearly indicates that the legislature intended section 224.1 to be a standalone statute that should be read in isolation from the Insurance Code as a whole. We reject plaintiff's contention. Our supreme court has made it clear that in conducting an analysis of the class member factor, "we must read the statute as a whole and not as isolated provisions." *Metzger*, 209 Ill. 2d at 37; *Fisher*, 188 Ill. 2d at 463. Where a particular provision of a statute provides incidental benefits to one class but does so in order to benefit the primary class

for whose benefit the statute was enacted, no private right of action will be implied in favor of the class provided such incidental benefits. *Metzger*, 209 Ill. 2d at 38.

¶ 30    In the alternative, plaintiff argues that she is a class member because the scope and history of the Insurance Code establishes that its purpose is not simply to regulate insurance but to protect the Illinois public from unregulated insurance practices. Plaintiff contends that she is a member of the class for whose benefit section 224.1 was enacted because the plain language and legislative history of this section show that the legislature intended to protect employees from retaliatory discharge for refusing to consent to be insured on their lives by their employers. Specifically, plaintiff argues that section 224.1 regulates the insurable interest an employer may obtain by requiring the employee's consent before the employer may obtain that insurable interest. Plaintiff also contends that the second factor regarding prevention of her injury goes "hand-in-hand" with the analysis of the first factor because the primary focus of the Insurance Code includes protecting insureds and prospective insureds from unfairness in the purchase and sale of insurance policies.

¶ 31    Regarding the first factor, defendant responds that plaintiff is not a member of the class for whose benefit the Insurance Code was intended because it was not designed primarily to benefit employees who have disputes with their employers and does not focus on preventing discharge or other injuries to employees. Defendant cites *Price*, 109 Ill. 2d at 69, to support the proposition that the primary purpose of the Insurance Code is merely to regulate "all types of insurance" and "was designed to govern operations of insurance companies, not insureds [like the defendant employer, who provided the plaintiff employee with health insurance under the employer's group policy]." Defendant's reliance on *Price*, however, is misplaced. Whereas our analysis addresses whether a private right of action is implied, *Price* involved a common law retaliatory discharge claim. In

*Price*, the plaintiff argued that the health insurance regulations of the Insurance Code showed that there was a clearly mandated public policy against the discharge of employees for filing health insurance claims. *Id.* The defendant argued that the filing of a health insurance claim was founded on a private contractual right and was not a matter supported by public policy. *Id.* at 67. The court agreed with the defendant and held that the alleged discharge of an employee for filing a health insurance claim under the employer's group policy did not support a common law retaliatory discharge claim because the discharge did not violate a clearly mandated public policy. *Id.* at 69.

¶ 32    Regarding the second factor, defendant argues that the Insurance Code was not intended to prevent the alleged injuries plaintiff suffered because any protections extended to employees are incidental to the Insurance Code's primary focus of regulating insurance companies and the insurance industry. Defendant argues it is illogical to contend that the Insurance Code was designed to prevent employees from losing their jobs.

¶ 33    The Insurance Code consists of 45 articles. Section 224.1 appears in article XIV, which is entitled "Legal Reserve Life Insurance." 215 ILCS 5/art. XIV (West 2020). Some articles in the Insurance Code contain a section stating the purpose of the article. However, most articles, including article XIV at issue here, do not list any purpose. The following sections of the Insurance Code contain purpose statements that show the legislature's intent to protect the insured or promote the public welfare. Section 1301 states that the purpose of article XLIII, "Mortgage Insurance Consolidation," is to "protect the interests of Illinois insureds." *Id.* § 1301. Section 155.51 states that the purpose of article $IX^{1/}_{2}$, "Credit Life and Credit Accident and Health Insurance" is "to promote the public welfare." *Id.* § 155.51. Section 1201 states that the purpose of article XLII,

"Insurance Cost Containment," "is to promote the public welfare." *Id.* § 1201. Section 1001 states that the purpose of article XL, "Insurance Information and Privacy Protection,"

> "is to establish standards for the collection, use and disclosure of information gathered in connection with insurance transactions by insurance institutions ***; to maintain a balance between the need for information by those conducting the business of insurance and the public's need for fairness in insurance information practices, including the need to minimize intrusiveness." *Id.* § 1001.

¶ 34    Illinois courts have also recognized that the purpose of the Insurance Code is more than merely regulating insurance companies. See *Walsh v. Department of Insurance*, 2016 IL App (1st) 150439, ¶ 25 ("[t]he stated purpose of the Insurance Code is to protect the public interest in the area of for-profit insurance" (internal quotation marks omitted)); *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 277 (1992) ("purpose behind the statutorily mandated uninsured motorist provision is that the insured be placed in substantially the same position as if the wrongful uninsured driver had been minimally insured"); *Keller v. State Farm Insurance Co.*, 180 Ill. App. 3d 539, 556-57 (1989) ("purpose of section 155 of the Illinois Insurance Code is not only to aid the insured, but also to discourage insurers from profiting by their superior financial positions while delaying the payment of contractual obligations"); *Logsdon v. Shelter Mutual Insurance Co.*, 143 Ill. App. 3d 957, 961 (1986) (regarding uninsured motorist coverage, the purpose is to "ensure that insureds be provided adequate information so that they [can] make intelligent, informed decisions on the coverage they want and are willing to pay for").

¶ 35    Courts have also addressed concerns raised by stranger-originated life insurance (STOLI) coverage on another person's life. See 215 ILCS 159/5 (West 2020) (" 'Stranger-originated life

insurance' or 'STOLI' means an act, practice, or arrangement to initiate a life insurance policy for the benefit of a third-party investor who, at the time of policy origination, has no insurable interest in the insured."). An insurance policy on a person's life generally is void if the person did not consent to the issuance of the policy. See *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 427-28 (2004). A beneficiary of a life insurance policy has a financial interest in the insured's dying as soon as possible because an early death minimizes the amount of premiums the beneficiary would pay, and money received in the present is more valuable than money received in the future. *Ohio National Life Assurance Corp. v. Davis*, 803 F.3d 904, 907-08 (7th Cir. 2015). "So the requirement of consent protects the prospective insured; he is unlikely to consent to someone becoming the beneficiary if he suspects that person of wanting to shorten his life." *Id.* at 908. Courts are also "concerned with the unseemliness of gambling on when a person will die" (*id.*), which is referred to as wager policies. Consequently, one must have an interest, financial or otherwise, in the life of the insured rather than in his early death before one can take out a life insurance policy on a person. *Grigsby v. Russell*, 222 U.S. 149, 155 (1911).

¶ 36    As discussed above (*supra* ¶ 22), by providing in section 224.1 that employers have an insurable interest in the lives of their employees, the legislature recognized the benefits of COLI coverage to both employers and employees. Nevertheless, the legislature addressed the insurable interest concerns regarding STOLI coverage and wager policies among employers and their employees by including in section 224.1 the requirement that an employer shall not retaliate in any manner against an employee or a retired employee for refusing to consent to be insured. Specifically, the legislature subjected the employer's insurable interest in a current or retired employee's life to the requirements of obtaining the employee's consent and not retaliating against

the employee in any way if she refuses to give her consent. As discussed above (*supra* ¶ 21), this concern of protecting employees from STOLI coverage and wager policies is reflected in the floor debates prior to section 224.1's enactment.

¶ 37    We conclude that plaintiff is a member of the class for whose benefit the Insurance Code was enacted. When viewed as a whole, it is clear that the Insurance Code was primarily designed to promote the public welfare and protect the interests of the insureds (and prospective insureds) by regulating the insurance industry to ensure fair practices in the sale of insurance products. Furthermore, the protections afforded employees as prospective insureds under section 224.1 of the Insurance Code are not incidental to the Code's overall purpose. *Cf. Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 60 (providers of medical services to employees for work-related injuries were not members of the class benefitted by the statute because the statute's purpose was to protect employees by providing them with prompt and equitable compensation for their injuries and any benefit the providers received regarding payment obligations was at most incidental and provided solely in an effort to serve the goal of complete and prompt compensation for employees).

¶ 38                                    2. Plaintiff's Injury

¶ 39    Next, we consider whether plaintiff's injury is one the statute was designed to prevent. While section 224.1 specifically prohibits retaliating against an employee who refuses to consent to be insured by her employer, the statute's broad purpose is to protect the public by regulating the insurance industry to ensure fair practices. Just as employees, as members of the Illinois public, are part of the class for whom the statute was primarily enacted to benefit, it is clear that the Insurance Code is designed generally to prevent members of the public from being coerced or

duped into applying for life insurance coverage without their consent. As discussed above (*supra* ¶ 35), the prevention of STOLI coverage and wager policies has long been a concern in the regulation of insurance practices. Accordingly, we conclude that employers coercing employees to agree to COLI coverage or else face some form of retaliation, including discharge, is an injury the Insurance Code was designed to prevent.

¶ 40                                    3. Consistency

¶ 41    We next consider the third factor: whether a private right of action is consistent with the underlying purpose of the Insurance Code. *Pilotto v. Urban Outfitters West, L.L.C.*, 2017 IL App (1st) 160844, ¶ 26. Consistency with the underlying purpose of a statute includes ensuring that such a private right "would not adversely affect any other provision within it." *Id.* ¶ 27.

¶ 42    Plaintiff argues that implying a private right of action regarding section 224.1 would not undermine the operation of the statute, but rather would facilitate redress for violations of the statute. Defendant, however, argues that implying a private right of action for an employee is not consistent with the Insurance Code's underlying purpose of regulating the insurance industry because the Insurance Code gives the director of the Department of Insurance "broad enforcement powers" since the director "is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State." 215 ILCS 5/401 (West 2020).

¶ 43    "Cases where a private right of action has been found inconsistent with the purpose of a statute generally have involved situations where such a right would impede the operation of the statute in some way." *Fiumetto v. Garrett Enterprises, Inc.*, 321 Ill. App. 3d 946, 952 (2001). For example, in *Metzger*, 209 Ill. 2d at 39, the court found that an implied private right of action for a government whistleblower reprimanded after reporting statutory violations was inconsistent with

the Personnel Code (20 ILCS 415/1 *et seq.* (West 2002)). Specifically, the underlying purpose of the statute was to ensure government employee competency, and in ensuring such competency, the statute protected employees who reported such violations from unjust retaliation. *Metzger*, 209 Ill. 2d at 37-38. To carry out this purpose, the statute outlined procedures for the State to review whether an employee who was reprimanded after reporting a violation was unjustly disciplined. *Id.* at 39. The court found that implying a private right of action would have been inconsistent with the express procedures for carrying out the underlying purpose of the statute because it would have stripped the State of its independent authority to determine whether the reprimand was retaliation or appropriate management and would have given that authority to the courts instead. *Id.*

¶ 44    Similarly, in *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 686 (2010), the Livestock Act gave citizens the ability to provide some input through informational meetings but ultimately gave the Department of Agriculture discretion to determine compliance with the Act, as required before construction of a livestock facility could commence. See 510 ILCS 77/12.1 (West 2008). The Act left inspections and violation determinations to the department and provided that producers would be subject to fines or orders to cease operations for violations of the Act. Moreover, the Act did not preempt other common law causes of action such as nuisance. The court held that implying a private right of action would strongly undermine the department's authority, contrary to the legislature's intent. *Bos*, 406 Ill. App. 3d at 686 ("Where broad discretion is given to an agency, it negates the implication that there was legislative intent to create a private right of action." (Internal quotation marks omitted.)).

¶ 45    In contrast, in *Fiumetto*, 321 Ill. App. 3d at 953, where a former employee alleged that she was terminated for filing a claim for temporary unemployment benefits, the court found that a

private right of action for retaliatory discharge was consistent with the Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 1996)). The court found that the purpose of the remedial statute was to lessen the burden of unemployment on unemployed workers and "a private right of action would both benefit those that the statute was enacted to protect and dissuade employers from interfering with employees attempting to seek benefits under [the statute]." *Fiumetto*, 321 Ill. App. 3d at 952.

¶ 46 The case before us is similar to *Fiumetto* and distinguishable from *Metzger* and *Bos*. Similar to *Fiumetto*, a private right of action under section 224.1 of the Insurance Code would both benefit those employees that the statute was enacted to protect and dissuade employers from coercing employees who wish to exercise their right to refuse to consent to COLI coverage. Furthermore, providing an implied right of action for employees against their employers would not deprive the Department of Insurance of its independent ability to regulate the insurance industry for the benefit of the public and prevent unfair practices in the purchase and sale of insurance. Unlike the Personnel Code at issue in *Metzger*, the Insurance Code does not contain express outlined procedures for the director to review whether claims of retaliation were appropriate management decisions. *Cf. Metzger*, 209 Ill. 2d at 39. And unlike the Livestock Act at issue in *Bos*, the Insurance Code does not expressly outline a framework that leaves section 224.1 violation determinations solely to the discretion of the director of the Department of Insurance. *Cf. Bos*, 406 Ill. App. 3d at 686.

¶ 47 Accordingly, we hold that a private right of action is consistent with the underlying purpose of the Insurance Code.

¶ 48                                    4. Necessity

¶ 49    Finally, we examine whether implying a private right of action is necessary to provide an adequate remedy for violations of the Insurance Code. The Illinois Supreme Court has implied a private right of action under a statute "only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied." *Fisher*, 188 Ill. 2d at 464.

¶ 50    Plaintiff argues that this court should imply a private right of action because the potential penalty for violating section 224.1 is not adequate to ensure compliance with the statute. Specifically, reporting an employer's retaliatory action to the director of the Department of Insurance provides neither compensation nor an adequate remedy to an injured employee, makes compliance with section 224.1 unlikely, and renders ineffective the requirement of no retaliation, which is crucial to protect the element of the employee's valid consent to COLI coverage.

¶ 51    Defendant argues that a private right of action is not necessary because the legislature has provided an adequate statutory framework to encourage the reporting of violations and punish retaliation and any other violations of the Insurance Code. Specifically, the director of the Department of Insurance "is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State." 215 ILCS 5/401 (West 2020). Those powers include conducting investigations "to determine whether any person has violated any provision of such insurance laws" and instituting actions necessary for the enforcement of the Insurance Code or of any order or action made or taken by the director under the Insurance Code. *Id.* The director is authorized to subpoena and examine witnesses and documents related to investigations and hearings provided for by the Insurance Code. *Id.* § 403. Additionally, companies or persons who willfully or repeatedly violate the Insurance Code or any rule or regulation

promulgated by the director must forfeit to the State of Illinois a civil penalty not to exceed $2000. *Id.* § 403A(1). The Insurance Code includes a catchall penalty provision indicating that

> "[a]ny person who violates any of the provisions of this Code, or fails to comply with any duty imposed upon him or it by any provision of this law, for which violation or failure no penalty is elsewhere provided by the laws of this State, shall be guilty of a petty offense." *Id.* § 446.

¶ 52    Defendant argues that plaintiff may not like the way enforcement of the Insurance Code is structured because it does not expressly grant her the right to recover monetary damages, but her focus on a right to compensation for her injuries is not appropriate under the private right of action analysis of the fourth factor, which focuses instead on whether adequate remedies are provided to make compliance with section 224.1 of the Insurance Code likely. See *Metzger*, 209 Ill. 2d at 41 (the plaintiff could not satisfy the fourth factor of the implied private right of action analysis based on the expressed outlined procedures of the Personnel Code that encouraged the reporting of violations and ensured the effectiveness of the statute by preventing and punishing violations).

¶ 53    Defendant relies extensively on *Fisher*, 188 Ill. 2d 455, and *Metzger*, 209 Ill. 2d 30, to support its position. However, we find those cases distinguishable concerning the fourth factor analysis.

¶ 54    In *Fisher*, 188 Ill. 2d at 460, the court concluded that section 3-608 of the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)) did not imply a private right of action to nursing home employees who were harassed and discharged after providing information during an investigation concerning the death of a resident. Regarding the fourth factor necessity of an adequate remedy analysis, the court stated that the residents, who had a private right of action under the statute, and

their friends and families would monitor the conditions at the facilities and thereby deter violations of the statute. *Fisher*, 188 Ill. 2d at 465. Furthermore, the comprehensive statutory scheme gave the Illinois Department of Public Health numerous sanctions and remedies to punish statutory violations, including fines that accumulated for each day a violation existed, license revocations and suspensions, fines of up to $10,000 for intentionally failing to correct certain types of violations or impeding any investigation or enforcement action, and fines of up to $10,000 for any retaliation against a nursing home employee. *Id.* at 465-67.

¶ 55    In *Metzger*, 209 Ill. 2d at 45, the court concluded that the whistleblower statute in the Personnel Code (20 ILCS 415/19c.1 (West 2002)) did not imply a private right of action for state employees who suffer retaliatory action for reporting wrongdoing by other state employees. The court ruled that implying a private right of action for state employees was not necessary to achieve the statutory purpose of encouraging honesty and candor among state employees because the Personnel Code expressly provided sufficient sanctions and remedies for violations of its provisions, including (1) "an administrative process through the Civil Service Commission for both discipline and protection of state employees," (2) "judicial review of the Civil Service Commission's administrative decisions," (3) "authority for the Director of Central Management Services to institute and maintain any action or proceeding to secure compliance with the Personnel Code and its implementing rules and orders," and (4) "demotion, suspension, or discharge," and "criminal penalties for violation of any provision of the Personnel Code." *Metzger*, 209 Ill. 2d at 40-41.

¶ 56    Unlike the Nursing Home Care Act at issue in *Fisher* and the Personnel Code at issue in *Metzger*, the Insurance Code at issue here does not contain a multitude of express sanctions and

remedies to ensure compliance with section 224.1. One purpose of section 224.1 is to ensure that employees are free of coercion when deciding to consent to COLI coverage and implying a private right of action for employees who are retaliated against if they do not consent to this insurance coverage is necessary to achieve that purpose.

¶ 57    In *Rodgers v. St. Mary's Hospital of Decatur*, 149 Ill. 2d 302, 308 (1992), the court determined that the plaintiff was a member of the class for whose benefit the X-Ray Retention Act (X-Ray Act) (210 ILCS 90/0.01 *et seq.* (West 2000)) was enacted and that the plaintiff's injury, loss of evidence to support his medical malpractice claim, was one the X-Ray Act was designed to prevent. The court noted that the X-Ray Act provided no specific administrative remedy for a violation of the Act. *Rodgers*, 149 Ill. 2d at 308-09. The court further noted that administrative remedies would not provide an adequate remedy to those injured by violations of the X-Ray Act and that the threat of liability was an efficient method of enforcing the regulation. *Id.* at 309. Accordingly, the court concluded that a private right of action was necessary to provide an adequate remedy for violations of the Act and that it was consistent with the underlying purpose of the Act. *Id.*

¶ 58    Like the X-Ray Act at issue in *Rodgers*, the Insurance Code does not expressly provide sanctions and remedies for violations of section 224.1. As stated above (*supra* ¶ 51), the Insurance Code provides authority for the director to conduct investigations and hearings to determine whether any person has violated any provision of Illinois's insurance laws. 215 ILCS 5/401 (West 2020). This provision, however, is not sufficient to enable employees to freely exercise their choice to consent to COLI coverage and prevent and punish retaliatory action against employees who refuse to consent. A violation of the Insurance Code is a petty offense, which is punishable by a

fine of $75 to $1000 (730 ILCS 5/5-4.5-75(a) (West 2020)) and is "any offense for which a sentence of imprisonment is not an authorized disposition" (*id.* § 5-1-17). These penalties are too minimal to serve as a deterrent and assure compliance with section 224.1.

¶ 59    Given the Insurance Code's overarching objective to promote the public welfare and protect the interests of insureds and prospective insureds by ensuring fair practices in the sale of insurance products, eliminating coercion or misinformation in the purchase and sale of COLI coverage is an integral part of that goal. The type of workplace coercion alleged in this case would be difficult to police. When an employee is discharged in violation of section 224.1 for refusing to consent to COLI coverage, the other employees who do not want to consent to this coverage will observe any minimal penalty imposed by the director of the Department of Insurance and resign themselves to signing their employer's consent form instead of facing the loss of their job and income, like their hapless former employee. Keeping employers honest and fair in the purchase and sale of COLI coverage depends on the ability of the employees to seek meaningful redress if they suffer retaliation for refusing to consent. Those employees, however, are unlikely to exercise the right to refuse COLI coverage unless they are assured that they will not be the target of retribution by their employers.

¶ 60    The importance of true and voluntary consent to allowing a third-party beneficiary to purchase a life insurance policy on a person is necessary to avoid the harm of wager policies or situations similar to STOLI coverage. The importance of protecting the employees' voluntary consent in a COLI situation was recognized by the General Assembly when it enacted section 224.1 of the Insurance Code. Relegating discharged employees to lodging a consumer complaint with the director of the Department of Insurance—who does not have the power to impose

significant sanctions on an offending employer, order the employee's reinstatement or award the employee damages—is not sufficient to achieve the General Assembly's purposes. As a result, employees will simply resign themselves to succumbing to their employer's will and apply for life insurance coverage the employees do not want. For all practical purposes, the safeguard against any retaliation promised to employees by section 224.1 of the Insurance Code will be rendered meaningless.

¶ 61 *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 185 (1978), recognized a private right of action for retaliatory discharge based on the Workers' Compensation Act. The Illinois Supreme Court wrote:

> "The imposition of a small fine, enuring to the benefit of the State, does nothing to alleviate the plight of those employees who are threatened with retaliation and forgo their rights, or those who lose their jobs when they proceed to file claims under the Act." *Id.*

These considerations apply with equal force here.

¶ 62 Protecting the Illinois public from retaliation in the workplace for exercising their right to reject COLI coverage is a matter of ongoing concern for the General Assembly. While the General Assembly acknowledges the benefits of the use of COLI coverage in the workplace, it limited the legality of this coverage to the requirements that the employee must voluntarily consent and cannot face any retaliation for refusing to consent. We conclude that implying a private right of action for retaliatory discharge in violation of section 224.1 of the Insurance Code is necessary to provide an adequate remedy because the statutory requirements of voluntary employee consent and no retaliation for a refusal to consent would be ineffective unless such an action is implied.

¶ 63 For the foregoing reasons, we conclude that plaintiff is entitled to assert a private right of action to recover damages for the injuries she sustained as a result of defendant's alleged violation

of section 224.1 of the Insurance Code. Plaintiff was a member of the class for whose benefit the statute was enacted, the retaliation she allegedly suffered was one the statute was designed to prevent, a private right of action is consistent with the underlying purpose of the statute, and implying a private right of action is necessary to provide an adequate remedy for violation of section 224.1.

¶ 64                                III. CONCLUSION

¶ 65     For the foregoing reasons, we affirm the judgment of the circuit court that granted defendant's motion to dismiss plaintiff's common law retaliatory discharge claim. However, we reverse the trial court's dismissal of plaintiff's implied private right of action retaliatory discharge claim under section 224.1 of the Insurance Code.

¶ 66     Affirmed in part and reversed in part.

¶ 67     Cause remanded.

_____

### *Cretella v. Azcon, Inc.*, 2022 IL App (1st) 211224

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-4742; the Hon. Michael F. Otto, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | Dean J. Caras, of Caras Law Group, P.C., of Chicago, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Brian M. O'Neal, of McMahon Berger PC, of St. Louis, Missouri, for appellee. |

_____